IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLOBAL TECH SYSTEMS, INC.,

      Plaintiff,

v.                                                      No. CIV 13-1006 JAP/KBM

BECO DAIRY AUTOMATION, INC.,
and STAN BROWN,

      Defendants.

MEMORANDUM OPINION AND ORDER

DEFENDANT BECO'S MOTION TO DISMISS OR IN THE ALTERNATIVE,

TRANSFER VENUE (BECO's Motion to Transfer Venue) (Doc. No. 12), filed November 12,

2013, asks the Court, in accordance with 28 U.S.C. §§ 1404(a), 1406(a), and 1631, to dismiss

this lawsuit without prejudice or transfer the case to the United States District Court for the

Eastern District of California (California federal district court), where a related matter was filed

(*BECO v. GTS*, No. CIV 12-1310 LJO-S-MS) (California litigation).  BECO argues that the

claims alleged by Plaintiff Global Tech Systems, Inc. (GTS) in the New Mexico federal district

court (New Mexico litigation) are already before the California federal district court, and that the

California case was filed first-in-time.  Thus, according to BECO, the interests of fairness,

convenience, and judicial economy support dismissal of the New Mexico case without prejudice

or transfer of venue to the California federal district court.

1

Defendant STAN BROWN'S AMENDED MOTION[1] TO DISMISS COMPLAINT FOR

DAMAGES AND DECLARATORY RELIEF AND MEMORANDUM IN SUPPORT

(Defendant Brown's Motion to Transfer Venue) (Doc. No. 18) similarly urges, in accordance

with 28 U.S.C. § 1391 and Fed. R. Civ. P. 12(b)(3), that venue is proper in the California federal

district court where GTS has already submitted to the Court's jurisdiction.

On May 6, 2014, GTS filed PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION

TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE (Response) (Doc. No. 51),[2]

opposing both motions filed by Defendants BECO and Brown.  GTS asserts that venue is proper

in the New Mexico federal district court and asks the Court to deny Defendants' request to

dismiss or transfer the New Mexico litigation.

The Court also considered DEFENDANT BECO'S REPLY IN SUPPORT OF ITS

MOTION TO DISMISS, OR IN THE ALTERNATIVE, TRANSFER VENUE (BECO's Reply)

(Doc. No. 52).  BECO again argues that this Court should either dismiss the New Mexico

litigation or transfer the lawsuit to the California federal district court because the California

---

[1] Defendant Brown's Amended Motion (Doc. No. 18) corrected the number of times that Defendant Brown had visited New Mexico in the past five years.  The initial motion (Doc. No. 14) noted that Defendant Brown had visited New Mexico two times; Defendant Brown's Amended Affidavit states that he had visited New Mexico three times since 2008.  Defendant Brown's Amended Aff. at ¶ 4.  However, the argument concerning the Court's personal jurisdiction over Defendant Brown and the extent of Defendant Brown's contacts with New Mexico has been withdrawn.  NOTICE OF PARTIAL WITHDRAWAL OF STAN BROWN'S MOTION TO DISMISS COMPLAINT (Doc. No. 50). Defendant Brown, like Defendant Beco, only contends that venue should be transferred from the New Mexico federal district court to the California federal district court.  Defendant Brown's Amended Motion was intended to correct or supersede the original Motion.  Thus, the Court will deny as moot Defendant Brown's original Motion (Doc. No. 14).
[2] There was a delay in briefing Defendants' Motions to Transfer Venue based on a dispute related to GTS's Motion to Compel Jurisdictional Discovery and Defendant Brown's Motion for Protective Order. (*See* Doc. Nos. 32-34, 36-37, 39-43, 46.)  Although Chief United States Magistrate Judge Karen B. Molzen issued a ruling allowing limited jurisdictional discovery (Doc. No. 49), Defendant Brown subsequently withdrew the portion of his Motion to Transfer Venue concerning jurisdiction (Doc. No. 50).  Thus, briefing on the Motions to Transfer Venue ensued without the need for additional jurisdictional discovery.

litigation was filed first-in-time, arises out of the same operative facts, and contains "virtually"

the same claims and the same parties.

STAN BROWN'S REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF (Defendant Brown's Reply)

(Doc. No. 53) concurs and adopts the arguments and statements set out in BECO's Motion to

Transfer Venue and BECO's Reply.  Defendant Brown further asserts that venue is improper in

New Mexico and that the case should be transferred to the California federal district court.

### BACKGROUND[3]

I.    <u>GTS'S CLAIMS AGAINST DEFENDANTS BECO AND BROWN</u> (Complaint) (Doc.
No. 1 in New Mexico litigation)

GTS alleges that it is primarily engaged in the business of developing software and

hardware for the dairy industry.  Complaint at ¶ 1.  The Complaint arises from a business

relationship and contracts between GTS, a New Mexico corporation, with its principal place of

business in Albuquerque, New Mexico, and BECO, a California corporation with its principal

office located in Hanford, California.  *Id.* at ¶¶ 2-4.  Defendant Brown, who resides in Visalia,

California, is President and part-owner of BECO.  *Id.* at ¶¶ 2, 5.  Defendant Brown is also a 25%

shareholder of GTS and was a director of GTS during relevant times relating to the allegations.

*Id.* at ¶ 5.  Rafael Antonio Fematt (Mr. Fematt) was the President of GTS from 2001 to 2013 and

---

[3] In its Reply, BECO asserts that it disputes "virtually all of" GTS's "relevant facts that were taken from the Complaint" and argues that such factual disputes are already before the California federal district court.  Moreover, BECO contends that GTS's allegations in the Complaint should not be accepted as true, are irrelevant to Beco's Motion to Transfer Venue, and that GTS included the factual allegations in its Response to disparage Defendants BECO and Brown.  BECO's Reply at 2.  In deciding a motion to dismiss for improper venue, the Court accepts as true the allegations in the Complaint to the extent that the allegations are uncontroverted.  "Conflicting affidavits are resolved in favor of the plaintiff as long they are sufficient to withstand contrary showing by the moving party."  *Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.,* 434 F.Supp.2d 1051, 1058 (D. Kan. 2006) (internal citation omitted).  Here, the Court merely summarizes some of the allegations from the Complaints in both proceedings for purposes of setting out the background and procedural history of the two lawsuits.

is currently in charge of research and development for GTS; apparently Mr. Fematt also worked for BECO for a number of years. *See discussion infra.* Mr. Fematt supplied a declaration in support of GTS's response stating "I briefly lived in California but have been a resident of New Mexico for the past seven years." Response, Fematt Decl. at ¶ 3 (Doc. No. 51-1).

In April 2005, GTS and BECO entered into an "Agreement between BECO Dairy Automation Inc., a California corporation and Global Tech Systems a New Mexico Corporation." (Distribution Agreement). Complaint, Ex. 1. The Distribution Agreement granted BECO the right to market certain GTS products and software in the United States and other limited areas. Complaint at ¶¶ 11, 12. The Distribution Agreement granted BECO rights to GTS's technology as it existed as of April 2005, but did not include any GTS products developed in the future or technological improvements made "to the Distribution Products." *Id.* at ¶¶ 11, 13. The Distribution Agreement also provided that "GTS owns all rights (patents, intellectual property, etc.) for all products in this agreement, BECO can't reproduce, copy or distribute any hardware or software involved for all products without explicit GTS authorization." *See id.* at ¶ 15. Allegedly, the parties contemplated that the Distribution Agreement would terminate at the end of 2007 and that a new agreement would be negotiated regarding future distribution rights. *Id.* at ¶ 16.

GTS alleges that it requested and attempted to reach a new distribution agreement but that BECO refused to negotiate in good faith. *Id.* at ¶ 17. During negotiations, GTS purportedly allowed BECO to continue to distribute certain products under the terms arrived at by the parties. According to the Distribution Agreement, BECO agreed to achieve specific monthly minimum sales. *See id.* at ¶ 19. GTS alleges that BECO failed to meet the minimum sales requirements and that GTS gave BECO notice and opportunity to cure its breach of contract. *Id.* at ¶¶ 20, 21.

On about March 4, 2010, GTS notified BECO that the Distribution Agreement was cancelled due to BECO's failure to negotiate and enter into a new distribution agreement and its failure to meet minimum sales levels.  *Id.* at ¶ 22.

In addition to bringing claims against BECO, GTS alleges wrongdoing by Defendant Brown, who was BECO's president and, as noted previously, also owned 25% of GTS's outstanding shares and served for many years as a GTS director.  *See id.* at ¶¶ 33-36; Response at 2.  GTS alleges that Defendant "Brown has engaged in a course of conduct to benefit his company, BECO, to the detriment of GTS," that Defendants Brown and BECO engaged in multiple unauthorized sales of GTS-patented products after GTS terminated its contractual relationship with BECO, and that BECO and Defendant Brown are infringing on GTS's patents. *Id.* at ¶¶ 27-35.

GTS's Complaint sets out the following claims:  Count I Declaratory Judgment against BECO; Count II Breach of the Distribution Agreement against BECO; Count III Breach of the "Cow ID Contract" against BECO; Count IV Unjust Enrichment against BECO and Defendant Brown; Count V Interference with Prospective Economic Advantage against BECO and Defendant Brown; Count VI Breach of Fiduciary Duty against Defendant Brown; Count VII Fraudulent Concealment against BECO and Defendant Brown; Count VIII Aiding and Abetting Fraudulent Concealment and Breach of Fiduciary Duty against BECO; Count IX Civil Conspiracy against BECO and Defendant Brown; Count X Violation of Uniform Trade Secrets Act against BECO and Defendant Brown; Count XI Conversion against BECO and Defendant Brown; XII Patent Infringement of the GTS Patents against BECO and Defendant Brown; and Count XIII Misappropriation of Intellectual Property against BECO and Defendant Brown.  GTS

seeks an award of compensatory and punitive damages and a declaratory judgment determining

the rights of the parties in accordance with the Distribution Agreement.  Complaint at pp. 23-24.

II.     BECO'S CLAIMS AGAINST GTS AND DOES 1 TO 50 (Doc. No. 1, exhibit,
        Complaint in California litigation) [4]

        BECO's Complaint in the California litigation provides more detailed allegations

concerning, *inter alia*, the parties' business relationship beginning in 1998 and the parties'

collaboration starting in 1998 on technology to produce a proprietary "no moving parts milk

meter system."  Complaint in California litigation at ¶ 6.  It appears that in 1998, BECO was

paying Mr. Fematt, who later became GTS's President, to work on developing the milk meter

system.  *Id.* at ¶ 10.  In about 2001, Defendant Brown, Mr. Fematt, and others developed GTS, a

New Mexico corporation, for purposes of continuing to develop the milk meter system.  *Id.* at

¶ 17.  Mr. Fematt allegedly was an employee of BECO's from about 2001 through 2007, i*d.* at

¶ 22, and Mr. Fematt declared in his affidavit that he was President of GTS from 2001 to 2013.

Fematt Decl. at ¶ 3.

        Similar to the Complaint in the New Mexico litigation, BECO sets out allegations in its

Complaint in the California litigation regarding the written contract, which appears to be the

Distribution Agreement, that BECO and GTS entered into in approximately May 2005.  *Id.* at ¶¶

33-35.  According to BECO's Complaint in the California litigation, the products that the parties

contemplated developing were not completed with the result that the parties encountered tensions

in their business relationship.  *Id.* at ¶¶ 37-50.

---

[4]  "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both
within and without the federal judicial system, if those proceedings have a direct relation to the matters at
issue."  *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979).

BECO's Complaint against GTS in the California litigation asserts numerous claims for breach of contract and fraud, along with claims for breach of fiduciary duty, intentional interference with economic relationship, and declaratory relief.

III.   PROCEDURAL HISTORY

   A.   *California Litigation and New Mexico Bankruptcy Litigation*

In July 2012, BECO filed a state court complaint against GTS in the Superior Court of the State of California.  On August 10, 2012, Defendant GTS removed BECO's California state court lawsuit to the federal district court in the Eastern District of California.  Complaint in the California litigation.

On April 24, 2013, GTS filed for bankruptcy in New Mexico.  (New Mexico Bankruptcy Case No. 13-11396-t11.)  About three months after receipt of the Notice Filing Bankruptcy, the California federal district court vacated all pending deadlines and hearings in the California litigation.  (Doc. No. 29 in California litigation.)  When GTS filed for bankruptcy, the California litigation was still in the pleading phase, with BECO just having received approval to file a Second Amended Complaint.  (Doc. No. 27 in California litigation.)  On November 12, 2013, BECO filed a Second Amended Complaint.

On November 13, 2013, the GTS bankruptcy case in New Mexico was closed.[5]  On November 26, 2013, GTS filed an Answer along with counterclaims in the California litigation.  (Doc. Nos. 30, 33 in California litigation.)  GTS asserted counterclaims against BECO but not against Brown.  GTS's counterclaims included claims for declaratory judgment, breach of contract regarding the "Development Agreement", breach of contract regarding the Cow ID Contract, interference with prospective economic advantage, and misappropriation of intellectual property.  (Doc. No. 33 in California litigation; *see also* Ex. B to BECO's Motion to Dismiss in

---

[5] The parties did not explain what occurred in the bankruptcy case.

New Mexico litigation).  On December 17, 2013, BECO filed an Answer to GTS's

counterclaims.  (Doc. No. 36 in California litigation.)  Since December 17, 2013, there have been

no docket entries in the California litigation, no scheduling order is in place, and the electronic

docket continues to indicate that the California litigation is "stayed."

B. *New Mexico Litigation*

On October 17, 2013, more than a year after BECO sued GTS in the California litigation,

GTS filed this lawsuit against Defendants BECO and Brown in the New Mexico federal district

court.  GTS asserted thirteen claims against Defendants BECO and/or Brown.  *See supra* at pp.

5.  Those claims include the same five counterclaims GTS asserted against Defendant BECO in

the California litigation.  In the New Mexico litigation, however, GTS also sued Defendant

Brown, who is not a party to the California litigation.

BECO argues that the only reason GTS failed to include Stan Brown as a counterclaimant

in the California litigation is because GTS is attempting to engage in "parallel litigation across

the two states" and in forum shopping.  BECO Reply at 3.  According to BECO, Stan Brown

offered "to resolve this matter by dropping his jurisdictional argument and agreeing that Plaintiff

[GTS] could amend its counterclaim in California to add him [Brown] as a party, if Plaintiff

[GTS] would agree to dismiss this [the New Mexico] lawsuit."  *Id.* (*citing* Ex. B to BECO's

Reply, consisting of email correspondence regarding an offer of settlement by Stan Brown that

GTS rejected on January 14, 2014).

Similar to the California litigation, the New Mexico litigation is also in the pleading

stages.  In the New Mexico litigation, Defendants have not filed Answers and have instead

moved to transfer venue.  No scheduling order is in place.

**DISCUSSION**

I.     PROPER VENUE, 28 U.S.C. § 1391

     The Court addresses venue provisions only after jurisdiction has been established.  Here, the parties do not contest the Court's jurisdiction.

     Under the applicable venue statute, 28 U.S.C. § 1391(b), a civil action may be brought in a judicial district where: (1) any defendant resides, if all defendants reside in the same State; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found, if there is no district in which the action may otherwise be brought. Venue concerns "the place where judicial authority may be exercised" and "relates to the convenience of litigants and as such is subject to their disposition." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939).

     The primary ground for venue is found in § 1391(b)(2).  Under that subsection, "venue is not limited to the district with the *most* substantial events or omissions."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (citation omitted) (emphasis in original).  Rather, § 1391(b)(2) "contemplates that venue can be appropriate in more than one district ... [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Id.* at 1165–66 (*quoting Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

     The Tenth Circuit Court of Appeals conducts a two-part analysis when reviewing challenges under § 1391(b)(2).  *Id.* at 1166.  Using the analysis in this case, this Court first examines the nature of GTS's claims and the acts or omissions underlying those claims.  Next, the Court determines whether substantial "events material to those claims occurred" in New Mexico, the forum state.  *See id.* (citations omitted).

> The substantiality requirement is satisfied upon a showing of "acts and omissions that have a close nexus" to the alleged claims. *Gulf Ins.*, 417 F.3d at 357; *accord Jenkins Brick Co.[ v. Bremer]*, 321 F.3d [1366], 1372 [(11th Cir. 2003)]; *Uffner v. [v. La Reunion Francaise, S.A.]*, 244 F.3d [38], 42 n. 6 [(1st Cir. 2001)] ("We look . . . not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim."); *see also* 17 James Wm. Moore, et al., *Moore's Federal Practice*, § 110.04[1] (3d ed. 2010) (stating that, when engaging in the substantiality analysis, courts "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim.")

*Id.* The Tenth Circuit has declined to hold that the venue inquiry is necessarily limited to the defendant's actions. *See id.* at 1166 n.11. However, generally, once venue is challenged, it is the Plaintiff's burden to establish that venue is proper in the forum district. *See Gwynn v. TransCor Am., Inc.*, 26 F.Supp.2d 1256, 1261 (D. Colo. 1998).

GTS argues that venue is proper in the District of New Mexico because "a substantial part of the events or omissions giving rise to the claims occurred" in New Mexico. For example, GTS asserts that "BECO placed orders to GTS in New Mexico, GTS created products to fill those orders in New Mexico, and the ultimate harm to GTS was felt in New Mexico." Response at 6. On March 4, 2010, GTS, on New Mexico letterhead, wrote to BECO informing it that GTS was canceling the Distribution Agreement and that BECO still owed GTS a certain sum of money on past due invoices. Complaint, Ex. 2 (Doc. No. 1-2). *See Employers Mut. Cas. Co.*, 618 F.3d 1166-67 (noting cases that have held that the jurisdiction where the loss or alleged damages occurred is substantial for venue purposes) (citations omitted).

In contrast, BECO urges that "[t]he operative facts in [GTS's] lawsuit all took place in either California, or in the Ukraine." BECO's Motion to Transfer Venue, at 2. BECO relies on Defendant Brown's unsworn declaration that states or implies that all parties signed the 2005 Distribution Agreement in Hanford, California. Brown Decl. at ¶ 9 (Doc. No. 12-1). Defendant

Brown summarily asserts that "none of the events giving rise to Plaintiff's claims occurred in New Mexico."  Defendant Brown's Motion to Transfer Venue at 4.

In reviewing the Complaint and the Distribution Agreement, it appears that GTS's allegations, in large part, pertain to products and intellectual property owned by GTS, a New Mexico corporation.  GTS allegedly obtained patents as to some of this property, patents possibly issued to GTS in New Mexico.  *See* Complaint at ¶ 14.  In addition, while the Complaint is unclear, it may be that GTS is trying to allege that BECO attempted to hire a full time GTS software engineer while the engineer was working for GTS in New Mexico.  *See id.* at ¶¶ 43, 44.  GTS further alleges that BECO failed to pay GTS for certain sales, presumably in New Mexico at GTS's place of business.  *Id.* at ¶ 50.  The Complaint asserts a cause of action under a New Mexico statute, the Uniform Trade Secrets Act, NMSA 1978 §§ 57-3A-1.

In addition, GTS does not argue that it was precluded from filing its claims against Defendants BECO and Brown in the California federal district court.  Moreover, GTS submitted to the California federal district court's jurisdiction in *BECO v. GTS*.

The Distribution Agreement, however, clearly allowed BECO to distribute or market certain GTS products in places other than New Mexico, *e.g.*, in various parts of the United States, Canada, Saudi Arabia, and Japan.  *Id.* at ¶ 12.  Moreover, GTS contends that Defendants made "misleading promises to the Colorado dairy operator" regarding GTS products.  *Id.* at 35.  There are a number of allegations in the Complaint pertaining to the sales and delivery of GTS products to a dairy located in the Ukraine.  *See id.* at ¶¶ 39, 51, 104.

It is also clear that some of the alleged unlawful activity by Defendants BECO and Brown must have occurred in California.  For example, GTS alleged that BECO manufactured or caused the manufacture of components related to the use and operation of GTS products.  *See id.*

at ¶ 60.  Because BECO's principal place of business was in California, it is likely that BECO

manufactured the products to which GTS refers in that State.

While some of the substantial events underlying GTS's claims took place outside of New

Mexico, the Court nonetheless concludes that GTS has satisfied its burden of demonstrating that

"substantial events material to those claims" also occurred in New Mexico.  *See Emp'rs Mut.*

*Cas. Co.*, 618 F.3d at 1165.  Thus, this is a case where venue is proper in either New Mexico or

California.  Accordingly, the Court declines to dismiss the New Mexico litigation under Fed. R.

Civ. P. 12(b)(3) for improper venue.

II.      TRANSFER VENUE, 28 U.S.C. § 1404(a)

In the alternative, Defendants ask the Court to transfer the New Mexico litigation to the

California federal district court in the Eastern District of California.  Defendant BECO invokes

28 U.S.C. §§ 1404(a), 1406(a), and 1631 in arguing that the New Mexico litigation should be

transferred.  However, § 1404(a) transfers are distinguished from transfers under §§ 1406(a) and

1631.  Sections 1406(a) and 1631address transfer of cases where venue is found improper or

where jurisdiction is lacking.  The Court has already determined that venue is proper in New

Mexico and that this Court has jurisdiction over Defendants.  Thus, only 28 U.S.C. § 1404(a)

could support transfer of the New Mexico litigation to the California federal district court.  *See*

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 n.3 (10th Cir. 1991) (in

§ 1404(a) transfers, both the transferor and the transferee courts have venue over the action).

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented."  28

U.S.C. § 1404(a).  The Tenth Circuit Court directs district courts to weigh the following

discretionary factors in determining whether a case should be transferred to another federal

district court:

> the plaintiff's choice of forum; the accessibility of witnesses and
> other sources of proof, including the availability of compulsory
> process to ensure attendance of witnesses; the cost of making the
> necessary proof; questions as to the enforceability of a judgment if
> one is obtained; relative advantages and obstacles to a fair trial;
> difficulties that may arise from congested dockets; the possibility
> of the existence of questions arising in the area of conflict of laws;
> the advantage of having a local court determine questions of local
> law; and [] all other considerations of a practical nature that make a
> trial easy, expeditious and economical.

*Employers Mut. Cas. Co.*, 618 F.3d at 1167 (citation omitted).  The party moving to transfer a

case bears the burden of establishing that the existing forum is inconvenient.  *Id.* (citation

omitted).  Thus, Defendants BECO and Brown must demonstrate that transfer of venue is

appropriate under § 1404(a).[6]

"Section 1404(a) affords a district court broad discretion to adjudicate motions to transfer

based on a case-by-case review of convenience and fairness."  *United States ex rel., Brown*

*Minneapolis Tank Co. v. Kinley Constr. Co.*, 816 F. Supp. 2d 1139, 1149 (D.N.M. 2011) (*citing*

*Chrysler Credit Corp.*, 928 F.2d at 1516).  Section 1404(a) "permits a 'flexible and

individualized analysis,' and affords district courts the opportunity to look beyond a narrow or

rigid set of considerations in their determinations."  *Id.* (citation omitted).

---

[6] Defendants, as movants, have the burden of establishing that New Mexico, the existing forum in this lawsuit, is inconvenient.  But, in analyzing the factors, sometimes described as "competing equities*," see, e.g., Hustler Magazine, Inc. v. U.S. Dist. Court for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986), some courts not only examine the convenience of both fora but state that the moving party must show that the alternate forum, "is more convenient and would better serve the interests of justice."  *See, e.g., Lehman Bros. Holdings Inc. v. Universal American Mortg. Co., LLC*, 2013 WL 2477154, at *3 (D. Colo. June 10, 2013) (unpublished) (internal citations omitted); *Miller v. Unterreiner,*  2013 WL 6152362, at *7 (D. Colo. Nov. 22, 2013) (discussing cases holding that more witnesses and operative events were located in transferee court).

A.     Plaintiff's Choice of Forum

"Unless the balance is strongly in the favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quotation omitted). This factor weighs most heavily against transfer when a plaintiff files suit in its home forum. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). GTS is a New Mexico corporation with its principal place of business in Albuquerque. It has no presence in California. While Mr. Fematt, GTS's President, briefly lived in California years ago, he has been a resident of New Mexico for the last seven years and rarely travels to California. Mr. Fematt Decl. at ¶¶ 3. The facts giving rise to GTS's lawsuit have a material relation or significant connection to GTS's choice of forum. Thus, normally, GTS's choice of forum would weigh against transfer.

However, the Court must address the "first-to-file rule" that applies when two district courts have jurisdiction over the same or a substantially similar controversy. The first-to-file rule typically affords deference to the first-filed lawsuit. *See Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir. 1965) ("the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."); *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013) (under the first-to-file rule, the court in the case that is last filed may refuse to hear it if the issues raised in the cases substantially overlap). In *Kinley Const. Co.,* 816 F. Supp. 2d at 1149-50, the Honorable James O. Browning discussed the first-to-file rule:

> Federal courts have recognized that, as courts of coordinate
> jurisdiction and equal rank, they must be careful to avoid
> interfering with each other's affairs in order "to avoid the waste of
> duplication, to avoid rulings which may trench upon the authority

14

of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997) (quotation omitted). To aid in achieving this goal, the "first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court. *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 622, 625 (9th Cir. 1991). However, "simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case." *Hospah Coal Co. v. Chaco Energy* Co., 673 F.2d 1161, 1164 (10th Cir. 1982).

(*citing Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.,* 189 F.3d 477 (Table), 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (unpublished)).  The district court does not mechanically apply the first-to-file rule, and its ruling is reviewed only for an abuse of discretion.  *Id.* (citations omitted).

BECO filed the California litigation more than a year before GTS filed the New Mexico litigation.  GTS submitted to the California federal district court's jurisdiction by removing that case from California state court and by initiating motion practice in the California litigation. Moreover, while the two lawsuits are not identical in every way, the Court found that the New Mexico litigation could have been brought in the California federal district court.

Notwithstanding the fact that GTS failed to assert counterclaims against Defendant Brown in the California litigation, it is clear that GTS could have done so but declined to amend the counterclaims when given the opportunity.  BECO's Reply at 3; Ex. B (Doc. No. 52-2).  In addition, while GTS asserted thirteen claims against Defendants BECO and Brown  in the New Mexico litigation and only five counterclaims against BECO in the California litigation, all of the parties' claims and counterclaims in the two lawsuits arise out of the same or similar operative facts.  The Court is not convinced that anything precluded GTS from amending its

counterclaim in the California litigation to name Defendant Brown and to add counterclaims similar to the claims it makes in the New Mexico litigation.

Under these circumstances, where the California litigation was filed first and both cases are substantially similar and arise out of the same or similar operative facts, the plaintiff's choice of forum in the New Mexico litigation loses its significance. *See Kinley Const. Co.,* 816 F.Supp.2d at 1151 (citation omitted); *see also Am. Steamship Owners Mut. Prot. and Indemnity Ass'n, Inc. v. Lafarge N.A., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) (noting that "[d]eference to a plaintiff's choice of forum can ... be overcome by application of the first-filed rule"), *aff'd*, 599 F.3d 102 (2d Cir. 2010). That is true because there are two plaintiffs, one in the New Mexico litigation and one in the California litigation, and one plaintiff's choice of forum will necessarily be disturbed depending on the Court's decision. *See Kinley Const. Co.*, 816 F. Supp. 2d at 1151.

In addition, while some of the alleged violations have occurred in New Mexico, it appears from the allegations that other violations have taken place in California, other states, and other countries. It is not clear that the alleged breaches of contract, for example, are more tied to New Mexico than to California or another state. Thus, in balancing the considerations, the Court discounts GTS's choice of forum in the New Mexico litigation and concludes that the first-filed factor weighs strongly in favor of transfer of venue to the California federal district court.

B.    Witnesses and Sources of Proof

The Tenth Circuit Court has held that "[t]he convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citation omitted). "To demonstrate inconvenience, the movant must (1) identify the witnesses and locations; (2) indicate the quality or materiality of their testimony; and

(3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (citation omitted).

BECO asserts that "[a]ll of the Defendants live in California."  BECO's Motion to Transfer Venue at 4.  This merely means that Defendants BECO is a California-based company and that Brown resides in California.  In its Reply, BECO summarily argues that "most of the witnesses in this case, at least those working for BECO (including Mr. Brown) live and work in California."  BECO's Reply at 8.

GTS urges that "[t]he majority of the witnesses are located in New Mexico" and that "it would be a hardship for [its] employees to travel to California."  Response at 3.  In addition, GTS argues that if its employees had to go to California for purposes of litigation it would have a detrimental impact on GTS's operations.  *Id.*  GTS further observes that it is BECO's burden to show inconvenience and that BECO introduced no evidence about location of witnesses or sources of proof.  *Id.* at 7.

The Court agrees that BECO did not identify the potential or key witnesses and their location and failed to indicate the quality or materiality of the proposed witnesses' testimony.  Instead, BECO primarily responded to GTS's position that GTS employees should not be forced to travel to California.  For example, BECO argues that GTS employees are not required to actually litigate the claims and that, instead, GTS's attorneys litigate cases.  BECO further contends that at most, GTS's employees would be deposed once, "in New Mexico, and may have to appear for a day or two for trial" in the California federal district court.  Reply at 8.

In reviewing the allegations in both lawsuits, it appears that witnesses for the parties will be located in both New Mexico and California.  Depending on the number of witnesses who will

testify and the materiality of their testimony, one plaintiff will be more inconvenienced than the other should only one lawsuit proceed.  If the Court denies the Motions to Transfer Venue, this would mean that parallel litigation in New Mexico and California could proceed.  Under that scenario, witnesses from both GTS and BECO could be required to attend legal proceedings in both states.  This would greatly increase the parties' costs and expenses and needlessly expend judicial resources.  Each party's witnesses would be inconvenienced by having to travel to New Mexico or California.  Based on the possibility of parallel lawsuits going forward in different states, the Court finds that this factor favors transfer but only slightly due to Defendants' failure to satisfy their burden by providing specific information about witnesses and cost of proof.

     C.    <u>Enforceability of Judgment</u>

Defendants BECO and Brown have submitted to the jurisdiction of this Court.  GTS has submitted to the jurisdiction of the Eastern District of California District Court.  Thus, this factor neither weighs in favor of nor against transfer.

     D.    <u>Congestion of Dockets</u>

GTS points out that the parties will obtain faster resolution of this case in the New Mexico District Court.  United States Court statistics from 2013 show that in the Eastern District of California, 13.6% of cases are still pending after three years, as compared to only 6.5% of cases in the New Mexico District Court.  Response at 8.

BECO contends that notwithstanding court statistics, United States District Judge Lawrence J. O'Neill, the federal district judge assigned to the California litigation, has acted expeditiously.  For example, one day after GTS filed its reply brief in support of a motion to strike or dismiss BECO's claims in the California litigation, Judge O'Neill set the matter for a hearing to occur approximately 30 days after briefing was complete.  BECO's reply at 4.  Several

months later, Judge O'Neill entered a Scheduling Order setting pretrial deadlines and a trial date of January 22, 2014.  *Id.*

BECO speculates that GTS's bankruptcy petition was nothing more than a tactical maneuver by GTS to stay and delay the California litigation.  *Id.* at 4-5.  BECO further explains that "[r]ather than engage in protracted parallel litigation before two Courts and across two states, BECO ceased activity in the California litigation and filed the instant Motion [to transfer venue] before this Court."  *Id.* at 5.  This apparently explains why the California litigation has not moved forward since December 17, 2013, the date of the last filing, and why BECO, the plaintiff in that litigation, did not alert the California federal district court that it should enter a new Scheduling Order.  *See id.*

Based on Judge O'Neill's prompt early action in the California litigation and BECO's explanation why it elected to proceed with a Motion to Transfer Venue in the second-filed lawsuit rather than submit more filings in the California litigation, the Court is unpersuaded that the New Mexico litigation will proceed more quickly than the California litigation or that the California litigation will face unusual delay .  Thus, the Court finds that this factor weighs slightly in favor of transfer.

E.      Conflict of Laws/Questions of Local Law

In a diversity action, courts prefer adjudication by a court sitting in the state that provides the governing substantive law.  *See Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567-68 (10th Cir. 1978).  However, the California federal district court is quite able to apply New Mexico law on the claims in this lawsuit, *e.g.* breach of contract, breach of fiduciary duty, conversion, and declaratory judgment.  In addition,  there does not

appear to be any conflict of law should this matter be transferred to the California federal district court.

GTS has asserted at least one claim for violation of a New Mexico statute. BECO argues that the New Mexico Trade Secrets Act claim is neither complicated nor unique. Rather, it is "a verbatim recitation of the Uniform Trade Secrets Act" that federal courts frequently are called upon to interpret. BECO's Reply at 5. There is no indication that the California federal district court would be unable to properly apply the New Mexico Trade Secrets Act as federal courts are often called upon to interpret and apply other states' statutes. *See Employers Mut. Cas. Co.*, 618 F.3d at 1169 (noting that this factor is less significant because federal judges are qualified to apply state law). Thus, the Court finds this factor is neutral as to the decision.

F.    Balance of all Factors

The Court concludes that the balance of factors favors granting Defendants' Motions to Transfer Venue and transferring the New Mexico litigation to the California federal district court for the Eastern District of California. The Court recognizes the general proposition that the moving party must satisfy its burden of proving that the balance of equitable factors "strongly" favors the moving party and that merely shifting the inconveniences from one party to another does not justify change of venue. *See, e.g., Arr-Maz Prod., L.P. v. Shilling Const. Co., Inc.*, 2012 WL 5251191 at *6 (N.D. Okla. Oct. 24, 2012) (unpublished). However, the equitable factors, *e.g.,* deference to the plaintiff's choice of forum, may be overcome by application of the first-to-file rule. *See Miller v. Unterreiner*, 2013 WL 6152362 at *6 (D. Colo. Nov. 22, 2013) (unpublished). Indeed, a court "should depart from the 'first-filed' rule only in 'extraordinary circumstances' involving inequitable conduct, bad faith, anticipatory suits or forum shopping." *Id.* (*citing Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F.Supp.2d

20

1287, 1298 (D. Kan. 2010)).  There is no evidence here that BECO engaged in inequitable

conduct, bad faith, or forum shopping when it filed the California litigation more than a year

before GTS filed the present case in the New Mexico federal district court.  Thus, the first-to-file

rule applies.

Stated differently, the Court believes that the California federal district court is more

convenient and would better serve the interests of justice primarily due to the first-to file rule.

The purpose of the first-to-file rule is the maximization of judicial economy, *see Wallace B.*

*Roderick Revocable Living Trust.,* 679 F.Supp.2d at 1297 (D. Kan. 2010), and the Court finds

that it would be inefficient to allow two similar lawsuits to proceed simultaneously before two

federal district courts.

Moreover, the first-to-file rule is based on the principle that federal district courts should

not interfere with each other's affairs.  *Buzas Baseball, Inc*., 1999 WL 682883, at *2.  Permitting

the New Mexico litigation to proceed when it was filed more than a year after BECO initiated

the California litigation, and in a situation where both lawsuits arise from the same nucleus of

operative facts, would potentially "trench upon the authority" of a sister court.  *See id.*  In

addition, allowing simultaneous prosecution in two different courts relating to the same or

similar parties and legal issues would risk inconsistent rulings, could lead to piecemeal resolution

of issues that call for a uniform result, and would result in wastefulness of time, energy and

money for the parties and the Courts.  *See id.*; *Cessna Aircraft*, 348 F.2d at 692.

Thus, in the exercise of its wide discretion, the Court concludes that transfer of venue is

appropriate for "the convenience of the parties and witnesses" and "in the interests of justice."

*See* 28 U.S.C. § 1404(a).  The Court further finds that Defendants met their burden in proving

that the New Mexico litigation could have been brought in the California federal district court for

the Eastern District of California; that, under the circumstances, New Mexico is inconvenient; and that the interests of justice are better served if the case is transferred to the California federal district court. *See Chrysler Credit Corp.*, 928 F.2d at 1515. In sum, the Court determines that the above-described factors favor transfer of venue under 28 U.S.C. § 1404(a) and that all of the issues and parties can be joined in a single lawsuit. Therefore, the Court will grant Defendants' Motion to Transfer Venue to the California federal district court for the Eastern District of California.

IT IS THEREFORE ORDERED that:

(1) Defendant STAN BROWN'S MOTION TO DISMISS COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF AND MEMORANDUM IN SUPPORT  (Doc. No. 14) is DENIED as MOOT;

 (2)  DEFENDANT BECO'S MOTION TO DISMISS OR IN THE ALTERNATIVE, TRANSFER VENUE (Doc. No. 12) is GRANTED in part and DENIED in part, and

(3) Defendant STAN BROWN'S AMENDED MOTION TO DISMISS COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF AND MEMORANDUM IN SUPPORT (Doc. No. 18) is GRANTED in part and DENIED in part, with the result that Defendants' Motions to Transfer Venue are GRANTED;

(4) This case will be transferred, in accordance with 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of California where it may be joined with *BECO v. GTS*, No. CIV 12-1310 LJO-S-MS; and

(5)  The Clerk of the United States District Court for the District of New Mexico is directed to transfer this case to the United States District Court for the Eastern District of California.

_____
SENIOR UNITED STATES SENIOR JUDGE